IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ARTURO ROMERO,

    **Plaintiff,**

    v.

KANSAS HEAVY CONSTRUCTION, L.L.C.,

    **Defendant.**

Case No. 5:24-CV-02134-JAR

**MEMORANDUM AND ORDER**

Plaintiff Arturo Romero brings this action against his former employer, Defendant Kansas Heavy Construction, L.L.C., alleging age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), discrimination based on national origin in violation of Title VII of the Civil Rights Act of 1964, and retaliation in violation of Title VII. The Court previously granted summary judgment in favor of Defendant on Plaintiff's Title VII national origin discrimination and retaliation claims.[1] Accordingly, the only claim that remains for trial, which is scheduled to begin on January 26, 2026, is Plaintiff's ADEA claim. This matter is now before the Court on Plaintiff's Motion in Limine (Doc. 53) and Defendant's Motion in Limine (Doc. 54). The motions are fully briefed, and the Court is prepared to rule. For the reasons explained below, the Court grants in part and denies in part Plaintiff's motion and grants Defendant's motion.

**I.**     **Plaintiff's Motion in Limine**

The Court begins with Plaintiff's motion in limine. Plaintiff moves to exclude: (1) evidence regarding Plaintiff's employment after his termination; (2) evidence regarding

---

[1] Doc. 45.

Plaintiff's prior arrests; and (3) testimony or evidence from Kathy Mitchell, a former girlfriend of Plaintiff and employee of Defendant. The Court addresses each request in turn.

### A. Plaintiff's Employment After His Termination

Plaintiff first asks the Court to exclude as irrelevant under Fed. R. Evid. 401 testimony and evidence regarding Plaintiff's employment after he was terminated by Defendant, including testimony and evidence regarding his job performance in those subsequent jobs, the reasons why he is no longer employed by those employers, and his interactions with those subsequent employers. In support, Plaintiff relies on *James v. Reser's Fine Foods, Inc.*,[2] which arose in the context of a motion for a protective order and motion to quash subpoenas to a plaintiff's subsequent employers. There, the court granted the requested protective order as to subpoena requests seeking, among other things, subsequent employers' performance reviews and disciplinary records, concluding the defendant failed to demonstrate the relevance of such materials to the claims or defenses in the case.[3] However, the *James* court found that "records related to any termination" from subsequent employment were relevant to the defendant's defense that the plaintiff had failed to mitigate his damages and denied the protective order as to those materials.[4]

Here, Defendant responds that it seeks to introduce evidence regarding Plaintiff's post-termination employment only for the purpose of establishing its defense that Plaintiff failed to mitigate his damages, not to suggest that Plaintiff's subsequent job performance bears on the reasons for Defendant's termination decision. The Court agrees that post-termination employment evidence is relevant only to the extent it bears on mitigation of damages. When

---

[2] No. 24-cv-4091-KHV-TJJ, 2025 WL 2402239 (D. Kan. Aug. 19, 2025).

[3] *Id.* at *3–4.

[4] *Id.* at *5.

defending a plaintiff's claim for damages, the "defendant-employer bears the burden of showing that the plaintiff failed to mitigate" his damages.[5]  In doing so, courts in this district have found that a plaintiff's "failure to search for alternative work, his refusal to accept substantially equivalent employment, or his voluntary quitting of alternative employment without good cause constitute affirmative defenses to backpay liability."[6]  Accordingly, the Court limits any evidence of Plaintiff's post-termination employment to these mitigation issues and excludes any testimony and evidence regarding his job performance in subsequent employment, the reasons why Plaintiff is no longer employed by those employers, and his interactions with those subsequent employers.  The Court permits only evidence bearing on whether Plaintiff searched for alternative work, refused substantially equivalent employment, or voluntarily quit alternative employment without good cause.

### B. Plaintiff's Prior Arrests

Plaintiff next asks the Court to exclude evidence and testimony regarding Plaintiff's prior arrests for methamphetamine production, marijuana possession, and for non-support.  Plaintiff argues that this evidence is irrelevant under Fed. R. Evid. 401, is substantially more prejudicial than probative under Fed. R. Evid. 403, and constitutes improper character evidence under Fed. R. Evid. 404.  In response, Defendant does not address the admissibility of Plaintiff's prior arrests.  Instead, Defendant cites to *McKennon v. Nashville Banner Publishing Co.*,[7] and argues that evidence of Plaintiff's prior felony drug conviction is relevant as after-acquired evidence

---

[5] *Parker v. Delmar Gardens of Lenexa, Inc.*, No. 16-2169-JWL-GEB, 2017 WL 1650757, at *6 (D. Kan. May 2, 2017) (quoting *Leidel v. Ameripride Servs., Inc.*, 276 F. Supp. 2d 1138, 1142 (D. Kan. 2003)).

[6] *Volkman v. United Transp. Union*, 826 F. Supp. 1253, 1258 (D. Kan. 1993).

[7] 513 U.S. 352 (1995).

because Plaintiff falsely represented on his employment application that he had not been convicted of a felony or misdemeanor within the past ten years.

In *McKennon*, the Supreme Court considered what role evidence discovered by an employer, after it had already terminated an employee in violation of the ADEA, plays in the determination of liability and damages for that wrongful termination.[8] The Supreme Court held after-acquired evidence of misconduct by the former employee during the time of employment, while not relieving the employer of liability, may be relevant to the issue of damages.[9]

According to the Supreme Court, because Congress designed the ADEA as part of a broader remedial framework to eliminate discrimination in the workplace, "[i]t would not accord with this scheme if after-acquired evidence of wrongdoing that would have resulted in termination operates, in every instance, to bar all relief for an earlier violation of the Act."[10] As a consequence, the employer may be liable for the wrongful discharge of the employee, but the Supreme Court limited the admissibility of the after-acquired evidence to the determination of damages.

In applying *McKennon,* district courts consider a two-step process. First, the employer must establish "that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge."[11] Second, and only after an employer has met this initial showing, the after-acquired

---

[8] *McKennon*, 513 U.S. at 354.

[9] *Id.*

[10] *Id.* at 358.

[11] *Id.* at 362–63.

4

evidence may then be considered to limit the damages remedy available to the wrongfully terminated employee.[12]

Here, Defendant has not demonstrated, at least on the present record, how it will satisfy *McKennon's* requirements for admission of after-acquired evidence. Defendant proffers that it learned during discovery in this case that Plaintiff pleaded guilty to a felony drug conviction in *State of Kansas v. Romero*, Wyandotte County Case No. 2008-CR-000543, within ten years of Plaintiff completing his job application, on which Plaintiff marked "no" in response to the question asking whether he had been convicted of, or pleaded guilty or no contest to, any felony or misdemeanor in the past ten years. But Defendant makes no showing that this alleged false representation was "of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge."[13] Accordingly, the Court reserves ruling on the admissibility of this evidence as after-acquired evidence under *McKennon* until trial, when Defendant may supplement its position with an appropriate offer of proof outside the presence of the jury.

Accordingly, the Court grants Plaintiff's motion to exclude under Fed. R. Evid. 401, 403, and 404 evidence or testimony regarding Plaintiff's prior arrests for methamphetamine production, marijuana possession, and for non-support, because Defendant does not acknowledge the arrests in its response or articulate any basis, under *McKennon* or otherwise, for admitting evidence of those arrests. The Court reserves ruling, however, on whether Defendant may introduce limited after-acquired evidence that Plaintiff pleaded guilty to a felony drug conviction in *State of Kansas v. Romero*, Wyandotte County Case No. 2008-CR-000543, and

---

[12] *Perkins v. Silver Mountain Sports Club & Spa, LLC*, 557 F.3d 1141, 1145 (10th Cir. 2009) (citing *McKennon*, 513 U.S. at 362).

[13] *McKennon*, 513 U.S. at 362–63.

allegedly falsely answered the "past ten years" conviction question on his employment application, because Defendant has not yet made the showing required by *McKennon*. If Defendant intends to introduce this evidence, it shall first raise the issue at trial outside the presence of the jury by making an appropriate offer of proof demonstrating that the alleged misconduct was of such severity that Plaintiff would have been terminated on that ground alone.

### C.  Testimony or Evidence from Kathy Mitchell

Plaintiff lastly asks the Court to exclude, as substantially more prejudicial than probative under Fed. R. Evid. 403, testimony from Kathy Mitchell, a former girlfriend of Plaintiff and employee of Defendant, that Plaintiff purportedly drank alcohol and used drugs while working for Defendant. In response, Defendant proffers that Mitchell will testify about Plaintiff's unauthorized use of Defendant's company vehicles after work hours in violation of Defendant's company policy, including Plaintiff's alleged consumption of alcohol while driving a company vehicle and transporting Mitchell without obtaining prior approval from Defendant, also in violation of that policy. Defendant argues that this testimony is relevant to its after-acquired evidence defense.

In support of its argument, Defendant attaches excerpts of its company policy that identify conduct that may result in "accelerated corrective action," including "utilizing illegal drugs while on duty for the Company" and "[i]ntentional damage, theft, misuse, gross negligence or patterns of negligence in the care and handling of Company property or assets."[14] The policy further provides that "consumption, possession, sale, purchase, or being under the influence of alcohol in the workplace, while operating the Company vehicles or equipment . . . is strictly prohibited," and that company vehicles "may not be driven for any personal usage other than the

---

[14] Doc. 55 at 3.

commute to and from home (only if authorized to take the vehicle home)," that "[p]rior authorization of all passengers [is] required," and that "[o]nly other company employees and pre-approved passengers" may ride in the vehicle.[15]  Defendant contends that Plaintiff's alleged conduct would violate these provisions and would have justified Plaintiff's termination had Defendant known of it at the time of discharge.

On the present record, however, Defendant has not made the showing required by *McKennon*.  The policy language on which Defendant relies provides that certain conduct may result in "accelerated corrective action," but it does not establish, without further evidentiary support, that the alleged violations would have resulted in termination on those grounds alone.

Nor have the parties developed the record regarding Mitchell's position and responsibilities with Defendant during the relevant time period—such as whether she held any supervisory, management, or human resources role or otherwise had a duty to report policy violations—and how, if at all, her knowledge of Plaintiff's alleged conduct is attributable to Defendant for purposes of determining whether the evidence is truly after-acquired.

Accordingly, the Court reserves ruling on the admissibility of Mitchell's testimony as after-acquired evidence under *McKennon* until trial, when Defendant may supplement its position outside the presence of the jury with an appropriate offer of proof, including evidence that the alleged misconduct was of such severity that Plaintiff in fact would have been terminated on that ground alone had Defendant known of it at the time of discharge, and evidence addressing Defendant's knowledge (or lack thereof) of the alleged conduct when it occurred. The Court grants Plaintiff's motion, however, to the extent Defendant seeks to introduce any

---

[15] *Id.* at 3–4.

testimony or evidence of Plaintiff's alcohol or drug use that is unrelated to any alleged company policy violations.

## II. Defendant's Motion in Limine

The Court next turns to Defendant's motion in limine. Defendant seeks to exclude evidence and testimony that Ramon Martinez resigned from his employment with Defendant due to discrimination and hostile work environment, as well as Martinez's resignation letter. Martinez is Plaintiff's cousin and was employed by Defendant during the same period as Plaintiff and remained employed after Plaintiff's termination, until Martinez resigned on July 19, 2024. Defendant argues that testimony or evidence regarding Martinez's claims of discrimination and hostile work environment are irrelevant under Fed. R. Evid. 401, substantially more prejudicial than probative under Fed. R. Evid. 403, and improper character evidence under Fed. R. Evid. 404, because Martinez's allegations concern discrimination and hostile work environment on the basis of race and national origin—not age, which is the only protected characteristic at issue in this case.

Plaintiff agrees that the alleged discrimination Martinez experienced is not relevant to Plaintiff's ADEA claim and represents that he does not intend to introduce evidence relating to those matters. Accordingly, the Court grants Defendant's motion in limine and excludes evidence or testimony that Martinez resigned due to discrimination or a hostile work environment, including Martinez's resignation letter.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion in Limine (Doc. 53) is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that Defendant's Motion in Limine (Doc. 54) is **granted**.

**IT IS SO ORDERED.**

Dated: January 15, 2026

                                              S/ Julie A. Robinson
                                              JULIE A. ROBINSON
                                              UNITED STATES DISTRICT JUDGE